RECEIVED
IN LAKE CHARLES, LA.
OCT - 2 2013
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DOUGLAS TRENT YOUNGBLOOD | * | CIVIL ACTION NO. 2:12-CV-00287 |
| Plaintiff | * | |
| v. | * | JUDGE MINALDI |
| RAIN CII CARBON, L.L.C. | * | |
| Defendant | * | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [Doc. 21] filed by the third party defendant, Louisiana Pigment Company, L.P. (Louisiana Pigment). The defendant and third party plaintiff, Rain CII Carbon, L.L.C. (Rain) filed a Memorandum in Opposition [Doc. 25], to which Louisiana Pigment timely replied [Doc. 29]. For the following reasons, Louisiana Pigment's motion is **GRANTED**, and all claims against Louisiana Pigment are hereby **DISMISSED WITH PREJUDICE**.

### FACTS AND PROCEDURAL HISTORY

This action arises from injuries that Douglas Trent Youngblood (Youngblood) allegedly sustained at Rain's facility in Sulphur, Louisiana, on August 10, 2011. Youngblood was at the time employed by Ron Williams Construction, Inc., (Ron Williams) as a pneumatic tank truck driver. Ron Williams provided transportation of petroleum coke from Rain's facility to Louisiana Pigment. Youngblood's job was to pick up a load of petroleum coke, take a sample of it, and deliver it to Louisiana Pigment.

In order to accomplish this, Youngblood had to drive into the Rain facility, climb on top of his rounded truck tank, and open the hatches so that the coke could be loaded into his truck

tank. As a safety precaution, Rain provided him with a fall prevention system. This system consisted of an overhead "I-beam," along which ran a rolling trolley that connected to a retractable lanyard and yo-yo. This lanyard, in turn, was secured to Youngblood by way of a safety harness to guard against potential catastrophic injury in the event of a fall.

Once the petroleum coke was already in the truck tank, Youngblood was required to take a sample of the coke. The sampling essentially involved using a long sampling rod to pull coke from the tank and deposit it into a bucket. While atop the truck, Youngblood had already begun the sampling process when the trolley allegedly fell off the rails above and down to the floor below, jerking Youngblood violently to the side, resulting in injuries.

Youngblood subsequently filed suit against Rain in the Fourteenth Judicial District Court for the Parish of Calcasieu.[1] Rain removed the case to this court and filed a third party complaint against Louisiana Pigment based on an alleged duty to defend and hold Rain harmless against liability or loss pursuant to the Calcined Petroleum Coke Agreement Between CII Carbon, L.L.C. and Louisiana Pigment Company, L.P. [Doc. 21-4].[2] The contested provisions of the agreement follow:

> **13. INDEMNITY**
> The BUYER agrees that the care and use of Product after delivery shall be at its sole risk and expense and that it shall defend and hold the SELLER harmless against liability or loss on account of injury to persons or damage to property attributable to delivered Product except where due to the SELLER's sole negligence or willful misconduct.
>
> **8. DELIVERY, TITLE AND RISK OF LOSS**
> The SELLER shall deliver Product to the BUYER FOB truck at the SELLER's Lake Charles, Louisiana facility. Title to and risk of loss of Product shall pass from the SELLER to the BUYER when Product passes from the SELLER's loading spout to the BUYER's transportation equipment.

---

[1] Pet. [Doc. 1-2].
[2] Not. of Removal [Doc. 1]; Third Party Compl. [Doc. 8], at 1.

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). In a motion for summary judgment, "the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating . . . that there is an issue of material fact" which would preclude summary judgment. *Id.* (citing *Celotex*, 477 U.S. at 322)).

"In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party." *Jalal-Uddin Saeed v. Bennett-Fouch-Assocs.*, No. 2:12-cv-2278, 2013 U.S. Dist. LEXIS 20311, at *9 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A summary judgment is warranted when there is no genuine issue of fact for trial in that the record "could not lead a rational finder of fact to find for the non-moving party." *Id.*

## LAW & ANALYSIS

Louisiana Pigment argues that the indemnity provision does not apply herein because Youngblood's alleged injuries are not "attributable" to the delivered coke, per the terms of the agreement.[3] Louisiana Pigment, citing the dictionary definition of "attribute,"[4] argues that Youngblood's injuries could, hypothetically, easily have occurred prior to the loading of the

---

[3] Mot. for Summ. J. [Doc. 21-1], at 4.
[4] "Transitive verb: 1: to explain by indicating a cause . . . ." *Id.* at 5 (citing MERRIAM-WEBSTER DICTIONARY, *attribute*, http://www.merriam-webster.com/dictionary/attributable (last visited Sept. 23, 2013)).

3

coke into the truck—thus, prior to "delivery"—and there is no indication that Youngblood either slipped on the coke itself or lost his balance due to his sampling equipment.[5] Thus, as the injuries are not "attributable" to the product itself, Louisiana Pigment is not bound under the agreement.

Rain, on the other hand, argues that Louisiana Pigment's request that Youngblood perform product sampling services was the cause of the alleged injuries, as that was the activity in which Youngblood was engaged at the time the injuries were allegedly sustained.[6] Apparently, several months prior, Louisiana Pigment had complained about the quality of the coke they were receiving from Rain; the result of these concerns was a directive to the drivers to take samples of the coke while at the Rain facility.[7] Rain did not require the drivers to engage in product sampling.[8] Further, Rain contests Louisiana Pigment's interpretation of the "attributable to" language in the indemnity provision, stating that "but for" the Product, the lawsuit would not have occurred; Youngblood would not have been at Rain's facility, and Louisiana Pigment would not have contracted with Ron Williams.[9]

"Contract construction . . . is a question of law." *Mid Louisiana Gas Co. v. Fed. Energy Regulatory Comm'n*, 780 F.2d 1238, 1243 (5th Cir. 1986). *See also Clayton Williams Energy, Inc. v. Nat'l Union Fire Ins. Co. of La.*, No. 03-2980, 2004 U.S. Dist. LEXIS 22094, at * 40 (E.D. La. Nov. 2, 2004) ("Interpretation of the terms of a contract is a matter of law."). "The purpose of an indemnity agreement is to allocate the risk inherent in the activity between the parties to the contract." *Abbott*, 2 F.3d at 627, n. 52 (quoting *Liem*, 569 So. 2d at 608).

---

[5] Mot. for Summ J. [Doc. 21-1], at 6.
[6] Mem. in Opp. [Doc. 25], at 12.
[7] *Id.* at 12-13 (citing Dep. of Youngblood [Doc. 25-2], at 5-6).
[8] Briefly, the sampling procedure involved the use of a long sampling rod which was used to extract the coke from the truck's hatches. A small amount of coke was then deposited into a bucket carried by the driver. This was all done while the driver was atop the truck. Dep. of Youngblood [Doc. 25-2], at 7-10.
[9] Mem. in Opp. [Doc. 25], at 19.

4

"Agreements to indemnify are strictly construed and the party seeking to enforce such an agreement bears the burden of proof." *Abbott v. Equity Group*, 2 F.3d 613, 626 (5th Cir. 1993) (quoting *Liem v. Austin Power, Inc.*, 569 So. 2d 601, 608 (La. Ct. App. 1990)). "A contract of indemnity is construed in accordance with the general rules governing contract interpretation— 'when the words of a contract are clear, *unambiguous*, and lead to no absurd consequences, the contract is interpreted by the court *as a matter of law*'" *Id.* (citing *Carter v. BRMAP*, 591 So. 2d 1184, 1188 (La. Ct. App. 1991)) (emphasis in original). *See also Colville Plumbing & Irrigation, Inc. v. Century Sur. Co.*, No. 6:12-cv-1444, 2013 U.S. Dist. LEXIS 1665 at *11 (W.D. La. Jan. 3, 2013) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)) (stating that the determination of whether a contract is ambiguous or clear is a question of law for the court to decide). A contract term will be considered ambiguous if, "after applying the established rules of contract interpretation, the contract is uncertain as to the parties' intent and susceptible to more than one reasonable interpretation under the circumstances." *Riverwood Int'l Corp. v. Empl'rs Ins. Of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005) (citing *Shocklee v. Mass. Mut. Life Ins. Co.*, 369 F.3d 437, 440 (5th Cir. 2002)). "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE. ANN. art. 2050. However, "in contractual interpretation specific provisions control general provisions." *In re Charles H. Ponstein HMO La., Inc.*, No. 08-663, 2009 U.S. Dist. LEXIS 39754 at *16 (E.D. La. May 11, 2009).

Applying the foregoing principles to the disputed provisions herein, it seems clear that the language indicating that "The SELLER shall deliver Product to the BUYER FOB truck at the SELLER's Lake Charles, Louisiana facility,"[10] as well as the language indicating that title and

---

[10] Calcined Petroleum Coke Agreement Between CII Carbon, L.L.C. and Louisiana Pigment Company, L.P. [Doc. 21-4], at ¶ 8.

5

risk of loss pass from seller to buyer upon the transfer of the coke to the buyer's truck,[11] requires a finding that "delivery" is to be understood as having occurred upon the transfer of the petroleum coke into the delivery vehicle.

Reading the contract as a whole, pursuant to article 2050 of the Louisiana Civil Code, it may be said that the phrase, "The BUYER agrees that the care and use of Product after delivery shall be at its sole risk and expense" applies specifically to the time period after which the coke has been deposited into the hatches of the delivery truck. Such a reading would make paragraph 13 consistent with the provisions of paragraph 8. However, it then must be determined what is meant by the "care and use" of the product.

Rain argues that if Youngblood was engaged in the care and use of the product at the time he allegedly sustained his injuries, then the sole risk and expense of *any* injuries sustained by Youngblood are the responsibility of Louisiana Pigment.[12] However, Youngblood's alleged injuries did not arise as a result of his "care and use" of the product, but rather they resulted from either the failure of Rain's fall prevention system, or, as Rain alleges, from Youngblood's having tampered with the system.

Moreover, whether or not Louisiana Pigment has an obligation to indemnify and defend Rain in the instant suit is governed by the clause immediately following the "care and use" clause of paragraph 13. The agreement states: ". . . *and* that [BUYER] shall defend and hold the SELLER harmless against liability or loss on account of injury to persons or damage to property *attributable to* delivered Product except where due to the SELLER's sole negligence or willful misconduct."[13] As specific contractual provisions govern more general provisions, and this

---

[11] *Id.*
[12] Mem. in Opp. [Doc. 25], at 19.
[13] Calcined Petroleum Coke Agreement Between CII Carbon, L.L.C. and Louisiana Pigment Company, L.P. [Doc. 21-4], at ¶ 13 (emphasis added).

provision speaks directly to the obligations of the parties in the instance that a personal injury is sustained, this is the controlling provision. Also, the defense and indemnification provision is separated from the "care and use" provision by use of the disjunctive "and," rather than the conjunctive "or," further reinforcing that these are separate obligations.

It thus follows that the issue to be determined is whether Youngblood's alleged injuries are "attributable to" the product. If so, then Louisiana Pigment may still escape the obligation to defend and indemnify under the contract if the injuries were the result of Rain's sole negligence or willful misconduct. However, if the injuries were not attributable to the product, then Louisiana Pigment has no duty to defend or indemnify Rain, and it is irrelevant to the matter whether or not either Youngblood or Rain was the negligent party herein.

As a result, the inquiry is essentially a matter of causation and the degree to which Youngblood's alleged injuries are attributable to the petroleum coke. As discussed, Rain argues that the lawsuit itself, the relationship between Louisiana Pigment and Ron Williams, and Youngblood's very presence at Rain's facility are all "attributable to" the product.[14] Louisiana Pigment, on the other hand, points out that it was the malfunction of Rain's trolley that caused the alleged injuries, and that Youngblood stated in deposition that neither the petroleum coke nor the sampling equipment in any way caused or contributed to his injuries.[15]

The inherent problem with Rain's approach is that it suggests an interpretation that could very well be limitless—an interpretation that runs contrary to the plain language of the agreement. For instance, Rain's argument that the product itself caused the lawsuit, the contractual relationship between Ron Williams and Louisiana Pigment, and Youngblood's very presence at the facility argues for a view of causation that is indeed without bounds. Had the

---

[14] Mem. in Opp. [Doc. 25], at 19.
[15] Mot. for Summ. J. [Doc. 21-1], at 3.

7

parties originally intended all risk under all circumstances to be borne by Louisiana Pigment, the agreement could have, and would have, stated precisely that. The use of the term "attributable to delivered Product" indicates that parties only intended for Louisiana pigment to incur the obligation to defend and indemnify Rain when the injury in question bore a close causal relationship to the petroleum coke. Here, however, Youngblood alleges that his injuries were caused by the failure of Rain's fall prevention system,[16] whereas Rain has attempted to show that "Youngblood removed the trolley's locking pins, which caused the trolley to separate and fall from the I-beam."[17] In either case, it is an untenable argument to submit that the alleged injuries are "attributable to" the petroleum coke merely because the coke was the underlying subject of the initial agreement between Ron Williams and Louisiana Pigment, or because Youngblood had been sampling at the time of the fall, as the coke's presence did not contribute to the fall under either party's theory of the incident. If one were to adopt Rain's reasoning, it could also be said that the alleged injuries were attributable to the manufacturer of the engine in Youngblood's truck, as "but for" that engine Youngblood would not have even made it to the Rain facility. Such a broad contractual interpretation is not supported by the plain language of the agreement.

## LOUISIANA PIGMENT'S DUTY TO DEFEND

Further, the court is not persuaded by Rain's arguments regarding the prematurity of Louisiana Pigment's request for dismissal of its obligation to defend Rain. Rain relies entirely on *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37 (La. 2005) for the proposition that a court may not dismiss a claim for the enforcement of a contractual duty to defend under an indemnity agreement until the completion of the lawsuit.[18] Louisiana Pigment, on the other

---

[16] Pet. [Doc. 1-2], at ¶ 4.
[17] Mem. in Opp. [Doc. 25], at 21.
[18] Mem. in Opp. [Doc. 25], at 21.

hand, argues that *Suire* distinguishes between indemnity agreements—which depend on a suit's outcome—and contractual duties to defend, which do not.[19]

In *Suire*, the Louisiana Supreme Court stated that "An indemnitor is not liable under an indemnity agreement until the indemnitee 'actually makes payment or sustains loss.' Thus, [the Louisiana Supreme Court] has held that 'a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid." *Suire*, 907 So. 2d at 51 (citations omitted). However, the Louisiana Supreme Court took this position in *Suire* because "no determination of liability [had yet] been made" under the contract in question. *Id.* As such, Rain's interpretation of *Suire* is incomplete, because it neglects the possibility that the court, as is the case herein, will make a determination that a defense and indemnity clause is inapplicable because the lawsuit in question is outside of the scope of the agreement as a matter of law.

Accordingly,

**IT IS ORDERED** that Louisiana Pigment's Motion for Summary Judgment [Doc. 21] is hereby **GRANTED**, and all claims against it are hereby **DISMISSED WITH PREJUDICE**.

Lake Charles, Louisiana, this 2 day of Oct, 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[19] Reply [Doc. 29], at 3 (citing *Suire*, 907 So. 2d at 52).